ABRAHAM P. LOESBERG, Plaintiff, *v.* WILLIAM R. FRAAD, Doing Business under the Firm Name and Style of ALLIED SAND BLAST CLEANING COMPANY, Defendant.

CHARLES HENRY WILEN, Plaintiff, *v.* WILLIAM R. FRAAD, Doing Business under the Firm Name and Style of ALLIED SAND BLAST CLEANING COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, First District, September, 1922.

**Negligence — sandblasting building — damages — rule of res ipsa loquitur applicable.**

While defendant was engaged in sandblasting the front of the building which was next adjoining on the west where the plaintiffs' central suite consisting of seven rooms was located, sand from the blasting machine got into the premises of the plaintiffs causing damage to their business and property. On the trial of an action for damages it was admitted that it was impossible to prevent sand from coming from defendant's scaffold, though it was inclosed on the back and sides with canvas, and that a certain amount of sand did escape owing to the action of the wind. The plaintiffs testified that they were unable to keep their appointments or to perform any laboratory work three certain days and that so much working time was thereby lost. *Held*, that apart from proof of negligence the rule of *res ipsa loquitur* applied.

Plaintiffs as a result of being prevented from carrying on their business, having been deprived of their earning power occasioned by the negligence of the defendant, the proper measure of damages was compensation for lost time, and judgment is directed in favor of plaintiffs for the amount of the damage sustained by each as fixed by the court.

ACTIONS to recover damages for injuries to business and personal property alleged to have been caused by defendant's negligence.

*Budd S. Weisser*, for plaintiffs.

*Fliashnick & Sustick (William Sustick*, of counsel), for defendant.

NOONAN, J. These are companion actions which were tried together, being founded on the same alleged negligent conduct of the defendant in the operation of a sandblasting machine, the sole difference being the amount of damages claimed in such case. The plaintiffs are dentists, and at the times in question occupied a seven-room dental suite, situated on the fifth floor of No. 358 Fifth avenue, borough of Manhattan. This dental suite consisted of seven rooms, with two windows fronting on West Thirty-fourth street, near Fifth avenue. The seven rooms were composed in part of two operating rooms, each with one of the windows, one room being used by each plaintiff, two rooms occupied by each plaintiff separately as a laboratory room, a common reception

room and a room used by a nurse.  The part of the suite occupied by the plaintiff Wilen was rented to him by the plaintiff Loesberg, who had leased the entire suite and had fitted it out.  The expenses, including nurse's salary, were shared in common.  The defendant was engaged in the sandblasting business, and it is undisputed that on February 27 and 28 and on March 1, 1922, the particular work the defendant had in hand was the sandblasting of the front of the building, No. 1 West Thirty-fourth street which was next adjoining on the west the building where the plaintiffs' dental suite was located.  The witnesses on both sides were not agreed as to how long before these dates the defendant was engaged in doing this work.  The plaintiffs' witnesses said about two weeks, and those of the defendant said six days.  The defendant's witness Fraad said that the work was finished on March first, and the defendant's witness Burgner testified to the same effect, while the plaintiff Wilen on being recalled said that he thought the sandblasting was continued after March first.  The apparatus used by the defendant in sandblasting consisted of a platform or scaffolding twenty-eight feet long inclosed on the back and sides with canvas. The width of the platform was about four feet.  The height of the canvas was nine feet.  The only part of the scaffolding that was not inclosed was the part next to the wall of the building and the top.  On the bottom of the platform was a funnel-shaped device leading to a sleeve through which the sand after it was blasted descended to a receptacle on the street by means of an opening in the scaffold.  On the platform stood a nozzleman who held the nozzle of the hose through which the sand was forced against the wall of the building.  The sand striking the wall of the building with force cleans it, and after striking it bounds back to the platform and through the opening in the floor of the platform goes into the sleeve.  The building is fifty feet wide and the scaffold platform was twenty-eight feet long.  This necessitated the work being done in two strips, first the westerly side of the building and then the easterly.  The scaffold was hung from the cornice of the building and the work was commenced on the twelfth story, the building being twelve stories high.  The plaintiff Wilen testified that when he entered his office on February twenty-seventh at about ten o'clock in the morning he found a fine screen of sand smoke in the room, and on investigation discovered that there was a layer of sand particles all over the floor, furniture and office equipment.  February twenty-seventh was Monday, and he testified that the windows had been left open on Saturday, the twenty-fifth, when the office was closed for the day.  This opening was about two inches from the top, and the windows were found

opened to this extent on the morning of the twenty-seventh. He further testified that the windows were opened once in a while during the three days in question for the purposes of ventilation, but that even with the windows closed the sand still kept coming in. As to the condition of the rooms of the suite on the days mentioned the plaintiff Wilen was corroborated by the plaintiff Loesberg and by the plaintiffs' witness Lewis. Both plaintiffs testified that they were unable to keep their appointments or to perform any laboratory work during these three days and that so much working time was thereby lost. It was claimed by each plaintiff that they worked six hours a day for four days a week and their loss of income per hour was $10, or $180 for the three days. There was also a claim that certain drugs used in the business of the plaintiffs were destroyed by the sand.

There are only two questions in the case: *First,* whether the negligence of the defendant has been established, and, *second,* whether the proper measure of damages has been proven. I think both questions should be answered in the affirmative.

The basis of the actions is negligence. The negligent conduct of the defendant must accordingly be established. There is no doubt that the sand which was found in the plaintiffs' offices came from the sandblasting machine of the defendant. The plaintiff Wilen testified that he saw the sand coming out of the scaffold and going in the direction of his building. The sand could come from nowhere else but from the machine of the defendant. The plaintiff Wilen testified that there was a space of about a foot between the canvas on the sides of the scaffold and the wall of the building and that the sand came from this opening. This fact would explain how the sand got into the plaintiffs' offices. True, the defendant's witness Burgner, who was the operator or nozzleman on the job, testified that there was no opening and that the side flaps of the canvas were nailed in between the joists of the building whenever the work was going on. The plaintiffs' explanation is, however, more probable.

Apart from the proof of negligence the rule of *res ipsa loquitur* would seem to be applicable. As pointed out in the recent case of *Plumb* v. *Richmond Light & R. R. Co.,* 233 N. Y. 285, the neutral circumstances of control and management called upon the defendant for an explanation. There has not been a satisfactory explanation by the defendant of how the sand got into the plaintiffs' premises. I am convinced that the sand did come into the plaintiffs' premises, perhaps not to the extent narrated by their witnesses, but at least to an extent causing damage to their business and property. It

will not do for the defendant to say that this is a case of *damnum absque injuria.* The defendant's business although lawful is a lucrative one, and another principle involved is that the defendant cannot carry on its undertaking without making good any loss that occurs to the business or property of another, especially if that other is in an adjoining building, through the prosecution of the undertaking. The fact that the windows of the plaintiffs were left open or kept open at intervals during the performance of the work does not excuse the defendant. The plaintiffs were never notified to close their windows before the work commenced, and they could not be expected to keep their windows entirely closed while the work was going on and thus prevent means of ventilation. Besides, the defendant's witnesses admitted that it was impossible to prevent any sand coming from the scaffold, and that a certain amount of sand did escape owing to the action of the wind. If the operation could not be maintained without damage to the property of tenants of adjoining buildings, in my opinion the defendant must be prepared to make reparation for the damage. I think the proper measure of damages was adopted in this case. By the negligence of the defendant the plaintiffs were prevented from carrying on their business. As a result the plaintiffs were deprived of their earning power, which is measured by loss of time. The plaintiffs should be compensated for the value of their time. *Perlman* v. *Shanck,* 192 App. Div. 179.

The plaintiffs fall within the class of those whose livelihood depends upon the earning capacity of their brain and muscle. The amount of capital invested in their business is necessarily small and is only an incident to their business. *Kronold* v. *City of N. Y.,* 186 N. Y. 40, 44; *Gombert* v. *N. Y. C. & H. R. R. R. Co.,* 195 id. 273, 279; *Walsh* v. *N. Y. C. & H. R. R. R. Co.,* 204 id. 58; *Spreen* v. *Erie R. R. Co.,* 219 id. 533. In the *Kronold* case the court referred to the case of *Nash* v. *Sharpe,* 19 Hun, 365, where the plaintiff was a dentist and was allowed to prove a loss of personal earnings occasioned by the negligence of the defendant. It is true that in the cases just cited the plaintiffs lost their earning power by reason of injuries to their person. I can see no difference in principle, however, between such a case and one where, as here, the plaintiffs were deprived of earning power through an interruption to their business. In one case the subjective is involved and in the other the objective. In neither case are the profits of a business dependent upon invested capital drawn into discussion. There is no force in the argument of the defendant that because the business of the plaintiffs was solely by appointment and because, as the proof may show, they were able to keep these appointments

at a subsequent time there was no loss of earning power established. It loses sight of the fact, it seems to me, that the lost time should be given compensation. The plaintiffs lost the means of treating their patients on the days in question or on any one of the days, and also lost the opportunity of taking new patients. The loss of time can only be ascertained by determining the loss of earning power, which, in turn, can only be measured by estimating what was the average earnings for a definite period prior to the time of loss. The plaintiffs claim that they were earning $10 an hour and that they worked six hours a day and four days a week. According to this contention they lost $180 for the three days. After a review of the evidence I have come to the conclusion that this claim is somewhat exaggerated. The plaintiffs produced no evidence to show that they had been earning this sum in the past. The bank book produced by the plaintiff Wilen showed no such earnings. Nor was there any other documentary evidence, such as contracts with patients or check books to prove this earning power. Neither one of the plaintiffs was able to tell of the position of the scaffolding on any one of the three days. The evidence shows that the work of cleaning the building commenced on February twenty-fifth. The work was done in two strips, first the westerly half of the building was sandblasted, and then the easterly. This was necessary because the width of the building was fifty feet, while the width of the scaffold was twenty-eight feet. The operator was able to sandblast five stories a day. Considering the nature of the work, together with the time consumed for sandblasting each story of the building, which was at the most fifty minutes, and also the time used in lowering the scaffolding from story to story and in changing the ropes on the cornice when the transfer was made from the westerly to the easterly strip, it does not seem probable that the work would take more than six days to perform. The position of the scaffolding was constantly changing and it seems unlikely that it would remain near the fifth floor of the plaintiffs' building more than a short time on each occasion when the strips were cleaned. The plaintiff Wilen testified that more sand came into his office when the scaffolding was on a level with the fifth floor or below it, because, as he said, the sand had a tendency to fly in an upward and easterly direction. The defendant's witnesses Fraad and Burgner testified that the only day of the three when the scaffold was in proximity to the fifth story of plaintiffs' building was February twenty-eighth. The testimony of these witnesses seems reasonable. It does not seem likely that the sand would continually keep coming into the plaintiffs' offices during all of the three days. The changing

position of the scaffold would make this seem impossible. The scaffolding could only be near the fifth story or below on two occasions when the work was being done on the two strips and then only for a short period of time. For this reason I think the plaintiffs' amount of damages is not sustained by the evidence. Accordingly, I have fixed the damages of the plaintiff Wilen in the sum of $85, including a claim of $10 paid to the nurse for cleaning the office, and the damages of the plaintiff Loesberg are fixed in the sum of $110, including the loss of the drugs which were damaged by the sand and used in his business.

Judgment is, therefore, directed to be entered in favor of the plaintiffs for each of said amounts.

Judgments accordingly.